STATE OF NEBRASKA, APPELLEE, V. ROBERT M. LEE, APPELLANT.

525 N.W.2d 179

Filed December 23, 1994.   No. S-93-1096.

Thomas M. Kenney, Douglas County Public Defender, and Marcena M. Hendrix for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ., and GRANT, J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

Pursuant to verdict, the defendant-appellant, Robert M. Lee, was adjudged guilty of two counts of first degree sexual assault,

in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1989), which prohibits one 19 years of age or older from sexually penetrating, including through fellatio, another who is less than 16 years of age, Neb. Rev. Stat. § 28-318(6) (Reissue 1989). Lee appealed to the Nebraska Court of Appeals, assigning a variety of errors, including that the trial court erred in admitting certain evidence over his objections. Concluding that by making use of the evidence in question Lee had waived his objections, the Court of Appeals, in a memorandum opinion dated August 2, 1994, affirmed the judgment of the trial court. Lee thereupon sought further review by this court, asserting only that the Court of Appeals erred in concluding that he had waived his evidential objections. Although the Court of Appeals did so err, its judgment of affirmance was nonetheless correct; accordingly, we affirm.

## II. SCOPE OF REVIEW

In proceedings where the statutes embodying the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Anderson*, 245 Neb. 237, 512 N.W.2d 367 (1994); *State v. Baker*, 245 Neb. 153, 511 N.W.2d 757 (1994); *State v. Wood*, 245 Neb. 63, 511 N.W.2d 90 (1994).

## III. FACTS

Overruling Lee's objections that the evidence was not relevant and that, in any event, its probative value was outweighed by its unfairly prejudicial nature, the trial court received, during the plaintiff-appellee State's case in chief, a variety of sexually explicit items which police had seized from the residence Lee shared with his wife. These items were identified as trial exhibits 12, 13, 15, and 17.

Exhibit 12 appears to be a double page removed from a magazine. It consists largely of photographs depicting an adult male and adult female engaged in sexual play, including the suggestion of fellatio.

Exhibit 13 is a book dealing primarily with adult heterosexual conduct, including fellatio, and some adult female homosexual activity.

Exhibit 15 consists of 10 paperback books found in a box which deal with a variety of sexual activity. Seven of these include depictions of pedophilic conduct. Of these, one describes homosexual acts between a middle-aged man and a reluctant 14-year-old boy servant. Several of the others concern the attraction of adult females to young boys, and one deals with incest.

Exhibit 17 is an advertisement for male homosexual videotapes. Although nothing explicitly states that underage sexual activity is portrayed, some of the males pictured appear as if they could be underage, and a few of the titles include innuendo about underage sexual activity.

Lee and his wife both babysat and otherwise visited with the younger male victim from the time he was about $2^{1}/_{2}$ years old to the time he was about $5^{1}/_{2}$. According to this victim, Lee had the victim perform fellatio on Lee.

Lee babysat the older male victim from the time the latter was 8 years old until he was about 15 years old. According to this reluctant witness, during these occasions Lee performed fellatio upon him. He recognized exhibit 13 and one of the nonpedophilic books in exhibit 15 from snooping in Lee's dresser.

A then-21-year-old male witness testified, without objection, that he had seen exhibit 13 in Lee's possession, as well as two of the pedophilic books from exhibit 15. This witness said that he would go to Lee's home, and Lee would show these to the witness in the company of the older victim and another boy. According to this witness, this was done "in the attempt to get us aroused." While these books were being perused, they would discuss the homosexual activities described in the books. This witness also testified, again without objection, that although he never actually had sex with Lee, one time when he was 17 years old, Lee shoved the witness' head into Lee's crotch in an unsuccessful attempt to get the witness to perform fellatio.

The police officer who searched the Lee residence testified, without objection, that in the course of the search Lee admitted that there had been one occasion when the younger of the victims performed fellatio on Lee and that the older victim and

Lee performed fellatio on each other. Lee also admitted that he and an adult male coworker had performed fellatio on each other.

After the State rested, the defense put on its case, and both Lee and his wife testified about the sexual material.

The wife testified that exhibit 13 had been given to her by an old friend before she married Lee. When asked about exhibit 15, she testified that one of the books belonged to someone else, another was given by a friend, and a third was one that she and Lee had had since the two had been going together. The others were from Lee's place of employment. In a seeming contradiction, she testified further that the books had been in the house for only a week and that Lee was going to take them back to his place of employment. She also explained that exhibit 17 kept coming in the mail even though they had written and asked that it be stopped.

Lee testified that he had picked up some of the books constituting exhibit 15 around work and that some of them were given to him at work. He kept them in his dresser until he had read them, after which they were placed in a box. He also explained that he had ordered some pornographic information for the male coworker with whom the police officer claimed Lee had admitted engaging in fellatio. As the coworker still lived with his mother, he did not want it delivered there. As a result, Lee ended up on a mailing list and in possession of exhibit 17.

Lee denied having said he and the coworker had had sexual congress and testified that on the occasion the officer described involving the younger victim, the victim had grabbed Lee's penis and attempted to put it into the victim's mouth, but that Lee prevented that. According to Lee, the victim dominated the situation. Lee explained that the victim said he had participated in such activity with an uncle. However, Lee also testified that he had told the officer that there had been 10 to 12 occasions where the older victim had at least attempted to perform fellatio on Lee.

## IV. ANALYSIS

As part I foreshadows, we must review not only the Court of Appeals' determination that Lee waived his objections, but must

consider as well the admissibility of the evidence in question and the consequences of any erroneous ruling in that regard.

## 1. NONWAIVER OF OBJECTIONS

It is true that normally, an objection to inadmissible evidence is waived if the objecting party later introduces similar evidence. See, *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989); *State v. Harper*, 218 Neb. 870, 359 N.W.2d 806 (1984); *Tyrrell v. State*, 173 Neb. 859, 115 N.W.2d 459 (1962); *Johnson v. Airport Authority*, 173 Neb. 801, 115 N.W.2d 426 (1962); *Sump v. Omaha Public Power Dist.*, 168 Neb. 120, 95 N.W.2d 209 (1959); *Johnson v. State*, 112 Neb. 530, 199 N.W. 808 (1924); *Dawson v. State*, 96 Neb. 777, 148 N.W. 957 (1914). But the rule does not apply where the objecting party introduces similar evidence solely for the purpose of meeting the adversary's case by explaining or rebutting the original evidence. See, *Macke v. Wagener*, 106 Neb. 282, 183 N.W. 360 (1921); *In re Estate of Cheney*, 78 Neb. 274, 110 N.W. 731 (1907).

In *Macke*, the trial court, over plaintiff's objection, erroneously received in evidence a certain decree. Plaintiff then offered and the court received in evidence an opinion of this court which related to the decree. In rejecting defendant's claim that by so doing, plaintiff had waived her objection, the *Macke* court wrote that the questioned evidence having been received, plaintiff "might reasonably proceed in accordance with the view of the trial court and offer evidence of a similar character to rebut the inferences which might be drawn from defendant's evidence without waiving the objection." 106 Neb. at 288, 183 N.W. at 362.

Likewise, in *In re Estate of Cheney*, the trial court erroneously, over the contestant's objections, permitted certain witnesses to testify that the testator had the mental capacity to make a will. In rejecting the proponent's contention that the objections had been waived by the contestants' similar questions of their own witnesses, the court wrote:

> It is true the general rule is that an error in the admission of evidence is waived where the party aggrieved thereby subsequently introduces the same evidence. [Citations

omitted.] But a different rule obtains where a party, after objecting to evidence and excepting to the ruling thereof, introduces similar evidence, as in this case, solely for the purpose of meeting his adversary's case, rebutting or combating the evidence to which he excepted, but without any intention of abandoning his exceptions.

78 Neb. at 277-78, 110 N.W. at 732.

This case falls within the exception to the general rule, for Lee's testimony and that of his wife did nothing more than explain how the questioned evidence came to be in their possession. Their testimony in no sense used the questioned exhibits to bolster Lee's defense that he did not sexually penetrate the victims, but only attempted to rebut whatever inferences might be drawn by the presence of those items in Lee's residence. Consequently, Lee did not waive his objections.

## 2. ADMISSIBILITY OF EVIDENCE

That determination requires that we consider the admissibility of the questioned evidence.

Only relevant evidence is admissible. Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 1989). Relevant evidence is that evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989); *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994).

Here, the question was whether Lee sexually penetrated two males under 16 years of age through fellatio. In the absence of competent evidence that possessing material dealing with adult heterosexual fellatio somehow leads to engaging in pedophilic homosexual fellatio, exhibit 12 is not relevant and thus should not have been admitted.

Although in a different context, the court in *State v. Starkey*, 516 N.W.2d 918 (Minn. 1994), sums this issue up well. The defendant was accused of murdering one who the defendant claimed had tried to homosexually rape him. In support of the self-defense-from-rape theory, the defendant sought to introduce the decedent's collection of pornography. Out of 87 magazines

found, 9 contained violent sexual acts and only 6 showed heterosexual contact; the rest were homosexual. Seventeen out of 204 paperback books involved themes of homosexual rape and violent sex. Ten involved heterosexual sex, and two of those were forced sex.

The *Starkey* court noted that the defense making the decedent out as a violent homosexual predator was not bolstered any by expert opinion, nor did the defense propose a theory connecting the possession of pornography with the commission of sexual violence. The court summed up the defense counsel's failure by stating, "[T]here was no proof nor even an offer of proof to link [the decedent's] 'viewing with doing.' " *Id.* at 925. Cf. *United States v. Mann*, 26 M.J. 1 (C.M.A. 1988), *cert. denied* 488 U.S. 824, 109 S. Ct. 72, 102 L. Ed. 2d 49 (accused's magazines depicting sexual conduct among children and adults admissible in court-martial for indecent acts allegedly committed against 9-year-old daughter where prosecution required to show accused committed act with intent to gratify his sexual desires).

At first blush, it would seem that exhibit 13 suffers from the same infirmity as does exhibit 12. The difference, however, is the testimony that this exhibit was used to sexually arouse the older victim. Thus, there is evidence which, if believed by the jury, connects possession of exhibit 13 with the commission of the crime charged with respect to that victim. As a consequence, it was admissible unless excludable under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989), which provides that although relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." See *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989) (not error to receive in evidence movies shown to victims of homosexual contact).

Recognizing that most, if not all, evidence offered by a party is calculated to be prejudicial to the opposing party, we have held that only evidence tending to suggest a decision on an improper basis is unfairly prejudicial and thus a concern under rule 403. *State v. Perrigo*, 244 Neb. 990, 510 N.W.2d 304 (1994).

Evidence of the plan or scheme through which one seeks to

entice another into sexual congress does not tend to suggest a decision on an improper basis. Thus, in a case wherein the accused was charged with committing an indecent act with his 12-year-old daughter, the Court of Military Appeals in *United States v. Acton*, 38 M.J. 330 (C.M.A. 1993), *cert. denied* ____ U.S. ____, 114 S. Ct. 1056, 127 L. Ed. 2d 377 (1994), held admissible that portion of a videotape depicting incest which the accused had shown the daughter, as it proved, among other things, the accused's plan or scheme to condition his daughter to accept his sexual advances as permissible or normal. Similarly, in a prosecution for aggravated criminal sexual assault, the court in *People v. Mason*, 219 Ill. App. 3d 76, 578 N.E.2d 1351 (1991), held evidence that the defendant had shown the 7-year-old girl pornographic movies was admissible, as it suggested the defendant's self-arousal and could logically be interpreted as a scheme to seduce the girl. In the words of the court: "Such evidence is admissible in cases where the proffered evidence is so clearly connected with the main issue in the case at bar as to tend to prove the accused guilty of the offense charged." *Id.* at 80, 578 N.E.2d at 1355.

While Lee may have been entitled to have had the jury admonished that the evidence was relevant only with respect to the charge concerning the older victim, we have not been directed to any motion seeking such an admonition, nor has our search of the record revealed any such motion. We therefore do not concern ourselves with that issue.

Although there is no evidence that all of the books which make up exhibit 15 were shown to and discussed with the older victim, there is evidence that some of them were. Thus, for the reasons addressed with respect to exhibit 13, Lee's objections were not good as to the latter parts of exhibit 15.

The corollary to the rule that it is not error to exclude an exhibit which is in part admissible and in part inadmissible, see *Holman v. Papio-Missouri River Nat. Resources Dist.*, 246 Neb. 787, 523 N.W.2d 510 (1994), is that it is not error to overrule an objection which is in part valid and in part invalid. Thus, an objection to an exhibit as a whole is properly overruled where a part of the exhibit is admissible. *Skow v. Locke*, 3 Neb. (Unoff.) 176, 91 N.W. 204 (1902). In rejecting

a claim that the trial court had erred in admitting a large number of exhibits offered en masse, this court, in *Langdon v. Wintersteen*, 58 Neb. 278, 280-81, 78 N.W. 501, 502 (1899), wrote:

> The assignment relates to the whole mass of documents, and cannot permit an examination of the propriety of admitting each one separately. They came in on the redirect examination of the plaintiff after a cross-examination which was largely directed to bringing into question the fact of plaintiff's having purchased goods of the character and to the amount she had testified in chief, also towards showing that the stock was old, and being millinery, consequently of little value. The invoices were admitted after proof by the witness that she had actually bought and received the goods as therein stated, and some showed very recent purchase. The trial court restricted their use to the purposes indicated and practically told the jury they must not be considered as proving present values. There was no error in admitting some, at least, and the whole assignment must therefore fail.

See, also, *Powerine Co. v. Grimm Stamp & Badge Co.*, 127 Neb. 165, 254 N.W. 722 (1934) (objection to question properly overruled unless objection good as against entire question). Thus, all of exhibit 15 was properly admitted.

That leaves exhibit 17, which, like exhibit 12, was in no way tied by the State to the commission of the crimes at issue. Thus, it was improperly admitted.

### 3. CONSEQUENCE OF ERRONEOUS RULINGS

Left for consideration, then, is the consequence of the erroneous admission of exhibits 12 and 17.

In a jury trial of a criminal case, irrespective of whether an error in admitting or excluding evidence reaches a constitutional dimension, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Flores*, 245 Neb. 179, 512 N.W.2d 128 (1994); *State v. Hughes*, 244 Neb. 810, 510 N.W.2d 33 (1993), *cert. denied* ____ U.S. ____, 114 S. Ct. 2738, 129 L. Ed. 2d 859 (1994); *State v. Drinkwalter*, 242

Neb. 40, 493 N.W.2d 319 (1992).

In determining whether error in admitting evidence was harmless, an appellate court bases its decision on the entire record in determining whether the evidence materially influenced the jury in a verdict adverse to the defendant. *State v. Hankins*, 232 Neb. 608, 441 Neb. 854 (1989).

The improper admission of evidence is harmless error and does not require reversal if the evidence is cumulative and there is other competent evidence to support the conviction. *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993); *State v. Timmermann*, 240 Neb. 74, 480 N.W.2d 411 (1992); *State v. Guy*, 227 Neb. 610, 419 N.W.2d 152 (1988).

Given exhibit 13 and the mass of sexually explicit material contained in exhibit 15, the material contained in exhibits 12 and 17 is cumulative and pales into insignificance.

As the remaining competent evidence is sufficient to support Lee's convictions, the erroneous admission of exhibits 12 and 17 was harmless beyond a reasonable doubt.

## V. JUDGMENT

Accordingly, as first noted in part I, the judgment of the Court of Appeals is affirmed.

AFFIRMED.