CROWN PRODUCTS COMPANY, A NEBRASKA CORPORATION, APPELLEE, V. CITY OF RALSTON, NEBRASKA, APPELLANT.

567 N.W.2d 294

Filed August 15, 1997.    No. S-95-937.

Mark A. Klinker for appellant.

Michael S. Mostek and G. Michael Fenner, of McGill, Gotsdiner, Workman & Lepp, P.C., for appellee.

(1)

WHITE, C.J., CAPORALE, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

This is an action for breach of contract brought by Crown Products Company (Crown) against the City of Ralston (Ralston). After a claim filed by Crown was denied by Ralston, Crown appealed the denial to the district court. The district court found that Crown had not received a fair and impartial hearing before the Ralston City Council. The district court vacated the decision and remanded the action to the Ralston City Council for a new hearing. We affirm.

## BACKGROUND

In March 1992, Crown owned a production facility located at 5718 South 77th Street in Ralston, Nebraska.

Crown ceased its manufacturing operations in March 1992 and began to sell its assets. Crown offered to sell the property to Ralston for $300,000. Ralston did not accept this offer, and an auction was scheduled to sell the property.

Two environmental reviews of the property were conducted prior to the auction. These reports were made available to Ralston and other prospective bidders present at the auction. The auctioneer also prepared a real estate purchase contract, incorporating the terms of the auction, for signature of the successful bidder. This contract was made available to prospective bidders, including Ralston, prior to the auction.

The auction was held on May 7, 1992, and Ralston placed the highest bid of $250,000. After the auctioneer closed the sale, the auctioneer presented the contract to Ralston for signature. Ralston insisted, however, that an escape clause be inserted in the contract, permitting Ralston to investigate its environmental concerns about the property within 30 days. The provision read as follows: "We accept this contract with the City Ralston to have 30 days to do any tests needed for there [sic] project and test to be acceptable to City Ralston expense to be at City of Ralston expense [sic]." Crown agreed to the addition of this provision, and both parties signed the contract. The closing date for the purchase agreement was set for "approximately" June 15, 1992.

After Ralston signed the contract, Ralston hired a consulting company to perform a number of tests on the Crown facility. After it received the test results, the Ralston City Council met on June 9, 1992, and determined that based upon the results, Ralston would not purchase the Crown property. On June 10, Mayor Julie Haney notified Crown of this decision by a letter stating the following: "With deep regrets, I must inform you that based on the report prepared by the Nebraska Testing Lab and the findings of soil and water contamination contained therein, the City of Ralston must withdraw its offer to purchase the Crown Products facility."

Joe Blankenship, the president of Crown, testified that at the time Mayor Haney informed Crown that Ralston would not purchase Crown's facility as it was, she also stated that "the door was still open" for a purchase if Crown could address Ralston's environmental concerns. Thereafter, between June 1992 and May 1994, Crown and Ralston attempted to address the environmental issues concerning the property. Among other things, during this period the Nebraska Department of Environmental Quality undertook a review of the site and eventually declared the property to be a class III remedial action site and approved a work plan to clean up fuel oil that was present in the ground water at the site.

On May 3, 1994, the Ralston City Council determined that it was no longer interested in pursuing a purchase of Crown's property. On May 6, Crown was notified of this decision. Thereafter, Crown notified Ralston that it intended to sell the property at auction and hold Ralston liable for its damages. The property was sold at a second auction for $55,296.

Crown filed a claim for damages with the Ralston city clerk on August 2, 1994. A hearing on the claim was held before the Ralston City Council in September. Several council members who were members of the council at the time of the first auction and during the postauction negotiations participated in the hearing. Three of these council members placed affidavits in the record of the hearing, over Crown's objection. None of the council members would submit to sworn cross-examination. After the hearing was completed, the council voted unanimously to deny Crown's claim.

Crown filed a petition in error in the district court for Douglas County. In its petition, Crown alleged, inter alia, that Crown was denied due process by the Ralston City Council at the hearing for several reasons, to wit: (1) the city council was not an impartial judge of the claim; (2) Crown did not receive an answer to the claim and therefore did not have notice of Ralston's defenses; (3) Crown was not permitted discovery; (4) Crown was not permitted to raise pretrial motions regarding issues that were raised at the hearing; (5) Crown was not given the right and opportunity to compel the attendance of witnesses on its behalf at the hearing; (6) Crown was not given the right to question the witnesses in question-and-answer form; (7) Crown was not permitted to have the Nebraska rules of evidence applied in the proceedings; and (8) Crown was not given the right and opportunity to have witnesses for Ralston provide live sworn testimony, subject to cross-examination under oath.

After a trial on the issues, the district court held that Crown's due process rights were violated in that Crown did not receive an impartial hearing before an impartial board. The district court found that members of the city council that were on the city council during the decisionmaking process regarding the purchase of the Crown property would not respond to questioning by Crown and would not submit to cross-examination. The court also held that members of the city council with personal knowledge of the facts in dispute should have recused themselves. As a result, the district court vacated the decision of the Ralston City Council and remanded the claim to the city council for a new hearing on the claim.

Ralston now timely appeals.

## ASSIGNMENTS OF ERROR

Ralston assigns the following errors to the district court: (1) The court erred in exercising subject matter jurisdiction in the case at bar for the reason that Crown's claim was barred by the statute of limitations; (2) the court erred in finding that Crown's due process rights were violated by its not receiving an impartial hearing by an impartial board; (3) the court erred in impliedly finding that the procedures of Neb. Rev. Stat. §§ 16-726 to 16-729 (Reissue 1991) are unconstitutional as violative of the

Due Process Clauses of the Nebraska and U.S. Constitutions; and (4) the court erred in failing to decide the case on the merits of the issues presented and in failing to decide those issues in favor of Ralston.

## SCOPE OF REVIEW

In reviewing a decision based on a petition in error, an appellate court determines whether the inferior tribunal acted within its jurisdiction and whether the inferior tribunal's decision is supported by sufficient relevant evidence. *Luet, Inc. v. City of Omaha*, 247 Neb. 831, 530 N.W.2d 633 (1995).

## ANALYSIS

### FAILURE TO FILE CLAIM WITHIN 90 DAYS

In its initial assignment of error, Ralston argues that the district court erred in exercising jurisdiction over Crown's appeal from the city council determination because Crown did not comply with the statutory requirements for making such a claim provided for in § 16-726. Section 16-726 provides, in pertinent part, as follows:

> All liquidated and unliquidated claims and accounts payable against a city of the first class shall: (1) Be presented in writing; (2) state the name and address of the claimant and the amount of the claim; and (3) fully and accurately identify the items or services for which payment is claimed or the time, place, nature, and circumstances giving rise to the claim.
>
> As a condition precedent to maintaining an action for a claim, other than a tort claim as defined in section 13-903, the claimant shall file such claim within ninety days of the accrual of the claim in the office of the city clerk.

Crown's claim is that Ralston breached its agreement to purchase Crown's property. Ralston states, however, that it clearly indicated its disavowal of the contract on June 10, 1992, when the mayor of Ralston sent Crown a letter indicating that "the City of Ralston must withdraw its offer to purchase the Crown Products facility." Ralston argues that under § 16-726, Crown had 90 days to file its claim with Ralston for breach. Ralston claims that because Crown did not file within the statutorily prescribed time limit, Crown is time barred from filing its claim

with Ralston and that the district court had no jurisdiction to review Ralston's decision. Crown argues that Ralston has waived its statute of limitations defense under § 16-726 because it failed to raise the statute of limitations issue in its answer.

We find Crown's reasoning to be persuasive. In *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990), we stated that the notice requirement of Neb. Rev. Stat. § 13-905 (Reissue 1991) of the Nebraska Political Subdivisions Tort Claims Act is a procedural precedent to commencement of a negligence action, not a jurisdictional prerequisite for adjudication of a claim. Therefore, noncompliance with the notice requirement is a defense to the plaintiff's action which must be asserted.

The reasoning in *Millman* is persuasive. The 90-day "condition precedent" under § 16-726 is analogous to the notice provision in *Millman*. It is a procedural precedent to commencement of a claim, and noncompliance is therefore a defense to Crown's action. Nonconformance with a provision requiring notice to a state agency or political subdivision is an affirmative defense which must be raised before the first tribunal or agency charged with determining the cause of action. *Id.* If the state agency or political subdivision fails to raise the defense of noncompliance with the notice requirement, the state agency or political subdivision waives the defense. *Id.* See *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 440 N.W.2d 664 (1989) (statute of limitations in contract action against state waived where not raised in defendant's answer). Therefore, because Ralston failed to raise the defense of noncompliance before the first tribunal or agency charged with determining the action, that defense was waived.

## DUE PROCESS

We review a decision of the district court based on a petition in error by determining whether the inferior tribunal acted within its jurisdiction and whether the inferior tribunal's decision is supported by sufficient relevant evidence. *Luet, Inc. v. City of Omaha*, 247 Neb. 831, 530 N.W.2d 633 (1995). Having determined that the district court acted within its jurisdiction because Crown's noncompliance with § 16-726 was not raised

as a defense by Ralston, we now turn to Ralston's assignment of error as to due process.

Ralston asserts that the district court erred in finding that Crown's due process rights were violated by its not receiving an impartial hearing by an impartial board. We disagree. *Geringer v. City of Omaha*, 237 Neb. 928, 468 N.W.2d 372 (1991), holds that a party appearing before an agency or tribunal in an adjudication hearing is entitled to due process. This case goes on to state that due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board.

Crown appealed the city council's determination by the only manner possible: a petition in error. See Neb. Rev. Stat. § 25-1901 (Cum. Supp. 1994). In reviewing a decision of a tribunal in a petition in error proceeding, a court is to determine whether the tribunal acted within its jurisdiction and whether the decision rendered is supported by sufficient relevant evidence. *Luet, Inc. v. City of Omaha, supra*. However, when making this determination an appellate court is restricted to the record created before the lower tribunal. *Ashby v. Civil Serv. Comm.*, 241 Neb. 988, 492 N.W.2d 849 (1992). As such, the only opportunity an individual has to introduce evidence establishing his or her position is at the hearing before the tribunal. See *Dovel v. School Dist. No. 23*, 166 Neb. 548, 90 N.W.2d 58 (1958).

We conclude that the existence of this "one shot" chance of preparing an adequate record in an adjudication hearing before a tribunal requires procedural protections similar to those given to litigants in a judicial proceeding. One needs only to look at the facts in the instant case to see why this is so.

The facts before us show that the city council essentially thwarted Crown's only opportunity to create a record supporting its position. Crown was effectively prohibited from executing a proper cross-examination of council members regarding submitted affidavits. In addition, evidence exists that certain members with personal knowledge of pertinent facts failed to recuse themselves from the decisionmaking process. Absent the district court's determination that these actions violated Crown's due process rights, Crown would essentially have no

possibility of effective appellate review in light of the limited scope of review employed in a petition in error proceeding. We conclude that the district court's determination was correct because it is inherently unfair to allow a tribunal to govern the procedures used and evidence gathered at an adjudicatory hearing without limitations, especially when such actions ultimately deprive a party of competent judicial review. If a tribunal member becomes a witness, that tribunal member must recuse himself or herself from acting as a member of the tribunal. The record does not reflect that there was any recusal in this case. Based on the foregoing evidence, we cannot say that the district court's finding was not based on sufficient relevant evidence. We therefore conclude that the district court correctly determined that Crown's due process rights were violated.

## CONCLUSION

We find that the district court's decision was based on sufficient relevant evidence. We therefore affirm the district court's decision.

AFFIRMED.

WRIGHT, J., not participating.

CAPORALE, J., concurring.

I write separately only to note that I continue to think that *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990) (Fahrnbruch, J., dissenting; joined by White and Caporale, JJ.), was wrongly decided. Nonetheless, I recognize and accept that the majority of the court reasoned otherwise. I further accept that unless *Millman* is to be overturned, it controls the jurisdictional issue presented by this case.

As has been noted before, " 'in most matters it is more important that the applicable rule of law be settled than that it be settled right. . . . This is commonly true even where the error is a matter of serious concern, provided correction can be had by legislation.' " *State v. Hingst*, 251 Neb. 535, 539, 557 N.W.2d 681, 684 (1997) (Cassel, D.J., concurring, quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 52 S. Ct. 443, 76 L. Ed. 815 (1932) (Brandeis, J., dissenting)).

I therefore concur in the judgment of the court.

WHITE, C.J., dissenting.

I continue to adhere to the reasoning of the dissent in *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990).